IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

Case No.:4:19-cv-151-FL

| | |
|---|---|
| NEW BERN GOLF AND COUNTRY CLUB, INCORPORATED,<br><br>    Plaintiff,<br><br>v.<br><br>UNDERWRITERS AT LLOYD'S LONDON, specifically LLOYD'S 4242 and LLOYD'S 1301 and their respective members, NATIONAL FIRE & MARINE INSURANCE COMPANY, and BOULDER CLAIMS, LLC,<br><br>    Defendants. | |

## MOTION TO DISMISS OR STAY CASE PENDING APPRAISAL AND TO COMPEL APPRAISAL

NOW COME, Defendants Certain Interested Underwriters at Lloyd's, London Subscribing to Certificate No. 32-7560126847-S-00, incorrectly identified as "Underwriters at Lloyd's London, specifically Lloyd's 4242 and Lloyd's 1301 and their respective members" (hereinafter "Underwriters"), National Fire & Marine Insurance Company (hereinafter "NF&M") (Underwriters and NF&M are jointly hereinafter referred to as the "Market Insurers"), and Boulder Claims, LLC (hereinafter "Boulder Claims) (hereinafter collectively referred to as "Defendants"), by and through the undersigned counsel, and respectfully request that this Honorable Court compel Plaintiff to participate the appraisal process in accordance with the terms of the policy of insurance issued to Plaintiff and dismiss or these proceeding pending the conclusion of such appraisal. In support of this Motion, Defendants state as follows:

1.  Plaintiff New Bern Golf and Country Club, Inc. has attempted to assert a cause of action for breach of contract against Underwriters and NF&M; causes of action for (1) Unfair Claim Settlement Practices and (2) Unfair and Deceptive Trade Practices against all Defendants; and causes of action for (1) Unfair Claim Settlement Trade Practices and (2) Unfair and Deceptive Trade Practices against Boulder Claims.

2.  All purported causes of action arise from a dispute over the same issue – the amount of covered loss that Plaintiff incurred as a result of Hurricane Florene at the main building located at 4301 Country Club Road, Trent Woods, North Carolina 28562 (the "Property").

3.  The Market Insurers subscribed to a wind and hail named-peril policy, bearing Policy Number 32-7560126847-S-00 (the "Policy"), issued to Plaintiff and ensuring the main building of a country club.

4.  Shortly after Hurricane Florence impacted the area on September 14, 2018, Plaintiff reported a loss to the Property. Shortly thereafter, the Market Insurers, through Boulder Claims, began adjustment of the claim. Following an inspection on October 2, 2018 by independent field adjuster ("IA") retained by the Market Insurers, and an inspection by an engineer on October 14 and 15, 2018, Defendants were advised that the covered damages to the Property totaled $13,667.14 and did not exceed the Policy's applicable deductible.

5.  Plaintiff, through a public adjuster, subsequently provided a competing estimate totaling $415,763.60. In order to reconcile the disputed amount of loss, Plaintiff eventually permitted a reinspection of the Property.

6.  On November 19, 2019, the Market Insurers' representatives reinspected the Property, by Defendants sending an independent field adjuster, a second Keystone engineer, and a building consultant. The second Keystone engineer then prepared a supplemental report that

2

Case 4:19-cv-00151-BR   Document 17   Filed 01/09/20   Page 2 of 7
PD.27757767.1

ultimately determined that the conclusions reached in the First Keystone Report remained unchanged

7. In its Complaint, Plaintiff is claiming entitlement to additional proceeds under the Policy beyond the undisputed amount the Market Insurers previously acknowledged for this loss.

8. Specifically, Plaintiff alleges that "[a]lthough [Plaintiff] initially documented covered damages in the aggregate sum of $415,763.60, [Underwriters] and [NMF&M], through [Boulder Claims], now allege the total damage to be valued at only $13,667.14." (Compl. ¶ 9.)

9. The Policy, attached hereto as **Exhibit "A"** contains an appraisal condition, which provides as follows:

> **Article XXVI    Appraisal**
>
> If You and We fail to agree as to the value of the property or amount of loss, damage or expense, each shall, on the written demand of either, select a competent and impartial appraiser, and the appraisal shall be made at a reasonable time and place. The appraisers shall first select a competent and impartial umpire, and failing for fifteen (15) days to agree upon such umpire, then, on the request of the Named Insured or the Company, such shall be selected by a judge of a court of record in the state in which such appraisal is pending. The appraisers shall then appraise the loss, stating separately the value at the time of loss and amount of loss, and failing to agree, shall submit their differences to the umpire. A decision agreed to by any two shall determine the amount of loss and shall be binding. You and We shall each pay our chosen appraiser and shall bear equally the other expenses of the appraisal and umpire. We shall not be held to have waived any of Our rights by any act relating to appraisal.

(Ex. A, at Policy Form ICAT NPNA 100 (10 15).)

10. The Market Insurers have requested that the dispute as to the amount of loss be resolved through the Policy's appraisal process. A copy of the letter demanding that the dispute over the amount of loss be resolved by appraisal is attached hereto as **Exhibit "B".**

11. With regard to Settlement of Loss, the Policy provides, in pertinent part, as follows:

**Article XXIX     Settlement of Loss**

We will pay for covered loss or damage within 60 days after We receive Your signed sworn proof of loss and You have complied with all of the terms of this Policy, and:

    A. We have reached agreement with You on the amount of loss; or

    B. An appraisal award has been made.

(Ex. A, at Policy Form ICAT NPNA 100 (10 15).)

12. The Policy further provides as follows:

**Article XIX     Suit**

No suit, action or proceeding for the recovery of any claim under this Policy shall be sustainable in any court of law or equity unless:

    A. You are in full compliance with all of the terms of this Policy ….

(Ex. A, at Policy Form ICAT NPNA 100 (10 15).)

13. The appraisal clause in the Policy constitutes a valid, enforceable, and binding agreement to resolve disputes between the parties regarding the amount of loss through the appraisal process. See McMillan v. State Farm Fire & Cas. Co., 93 N.C. App. 748, 379 S.E.2d 88, 90 (N.C. Ct. App. 1989) ("We hold that plaintiff was bound by the terms of his contract with defendants, which clearly established the procedure for determining the amount of loss when in dispute.").

14. The Policy's appraisal clause, once invoked, becomes a condition precedent to the right of an insured to maintain a coverage action under the Policy. See Patel v. Scottsdale Ins. Co., 221 N.C. App. 476, 483, 728 S.E.2d 394, 399 (N.C. Ct. App. 2012) (holding that participation in and completion of the appraisal process was a condition precedent to the commencement of litigation against insurer, where policy provided that insurer had no obligation to make loss

payment until parties had either agreed on amount of loss or the appraisal process had been completed).

15. The Market Insurers have already admitted that a covered loss has occurred. However, the covered amount of loss is below the Policy's deductible. Accordingly, at least as to the actual contractual counts, the sole issue is the covered amount of loss to the Property. The question of the covered amount of loss is an issue properly the subject of appraisal.

16. The lawsuit, which is based on the Market Insurers' alleged failure to pay sufficient benefits under the Policy, is premature. Pursuant to the terms of the Policy and North Carolina law, the proper procedure is for any dispute over the amount of loss to be determined through the appraisal process.

17. Given that a condition precedent to the filing of this suit has not been met, this entire suit must be dismissed without prejudice or stayed or abated in order that the appraisal process can be completed. See Patel, 221 N.C. App. at 485, 728 S.E.2d at 400 ("[W]e conclude that a similar procedure should be adopted in cases involving a failure to comply with the appraisal provisions required by N.C. Gen. Stat. § 58–44–16(f)(14) and that … the trial court should have stayed the proceedings resulting from the filing of Plaintiff's complaint [and] ordered the parties to engage in the appraisal process required by the relevant policy language…."). See also Pierce v. Am. Strategic Ins. Corp., Case No. 3:16-cv-00085-FDW-DCK, 2016 U.S. Dist. LEXIS 71426, at *2-3 (W.D.N.C. June 1, 2016) (holding "the Court must afford the remedy prescribed by the North Carolina Court of Appeals; that is, staying this action and compelling participation in the appraisal process according to the policy's provisions"); Elmore v. Auto Owners Ins. Co., Case No. 2:12-cv-67, 2012 U.S. Dist. LEXIS 151371, at *1-2 (W.D.N.C. Oct. 22, 2012) (citing Patel and staying the lawsuit pending the conclusion of the appraisal process).

18. As the completion of the appraisal process may resolve the underlying controversy in this matter and moot all claims, the Court should also stay all extracontractual claims against the Defendants.[1] See, e.g., Patel, 729 S.E.2d at 399 (noting that trial court should have stayed all claims against the insurer, including claim for unfair or deceptive trade practices, since the appraisal process had not yet been completed.)

19. The appraisal process will resolve the issues concerning the loss that is the subject of Plaintiff's Complaint. Thus, it is in the interest of the parties, the Court and judicial economy that the lawsuit be dismissed, stayed, or abated, including staying all discovery, pending completion of the appraisal process and the time allotted thereafter pursuant to the Policy's Settlement of Loss condition within which the Market Insurers have to pay any further amounts owed pursuant to the Appraisal Award (if any).

20. Defendants have conferred with Plaintiff, who has been unable to offer a position on the motion.

WHEREFORE, for the reasons stated herein, Defendants respectfully requests that this Honorable Court:

a) dismiss this lawsuit pending the completion of the appraisal process; or alternatively;

---

[1] By seeking a dismissal or stay of this entire action pursuant to Patel and its progeny (as well as the sound persuasive authority from several other jurisdictions on this issue), Defendants are not conceding that the Complaint states valid extra-contractual causes of action against any of the Defendants and/or that Boulder Claims is a proper party to this suit. To the contrary, when reached on the merits, all extra-contractual causes of action against the Market Insurers should be dismissed and all causes of action against Boulder Claims should be dismissed. However, given that Defendants believe that, under North Carolina law, this matter should be stayed or dismissed pending the resolution of appraisal and that appraisal may resolve the underlying controversy in this matter and/or otherwise obviate the need for any further litigation, Defendants are not raising the merits of those causes of action at this time. It is Defendants' position and understanding that the substantive merits as to whether the Complaint states valid causes of action should not be addressed until after appraisal, and only if necessary at that time. Such an approach promotes judicial economy and conserves valuable judicial resource on alleged potential claims that may be mooted by appraisal. However, Defendants reserve the right to raise these arguments after the completion of the appraisal process.

b) stay or abate this entire lawsuit, including staying all discovery and case management deadlines; and

c) compel Plaintiff to complete the appraisal process pursuant to the Policy's Appraisal condition; and

d) grant such further relief that the Court deems just and proper.

Respectfully submitted this the 9th day of January, 2020.

                                   PHELPS DUNBAR LLP

                                   /s/ Kevin M O'Brien
Kevin M. O'Brien, NC Bar #43373
obrienk@phelps.coms
William R. Hartzell, NC Bar #50762
William.hartzell@phelps.com
Phelps Dunbar LLP
GlenLake One
4140 ParkLake Avenue, Suite 100
Raleigh, North Carolina 27612-3723
Telephone: 919-789-5300
Facsimile: 919-789-5301

*Attorneys for Defendants Certain Interested Underwriters at Lloyd's, London Subscribing to Certificate No. 32-7560126847-S-00, National Fire & Marine Insurance Company, and Boulder Claims, LLC*